IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Willie A. Sullivan, #275021, Plaintiff,

v.

SCDC, Director of SCDC Jon Ozmint, and Warden Tim Riley, Defendants.

Civil Action No. 8:07-3003-GRA-BHH

**REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court on the plaintiff's motion for summary judgment (Dkt. # 29) and the defendants' motion for summary judgment (Dkt. #32).[1]

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

---

[1]In a previous report and recommendation, the undersigned recommended the dismissal of the defendant SCDC on the ground that SCDC is not a proper party. (Dkt. # 15.) If the District Court Judge declines to adopt the prior report, alternatively, the undersigned recommends that the SCDC be dismissed as the plaintiff has failed to state a claim as discussed in ths report.

The plaintiff brought this action on August 28, 2007, seeking damages for alleged civil rights violations. On March 14, 2008, the plaintiff filed a motion for summary judgment. On April 1, 2008, the defendants' filed a response opposing the plaintiff's motion.

On March 26, 2008, the defendants also filed a motion for summary judgment. On March 27, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On May 1, 2008, the plaintiff filed a response opposing the defendants' motion.

**FACTS PRESENTED**

The plaintiff is a state inmate within the South Carolina Department of Corrections ("SCDC") currently housed at the Tyger River Correctional Institution ("TRCI"). In his complaint, the plaintiff states that he is a member of the Muslim faith and he alleges that his rights to freely exercise his religion under the First Amendment are being violated. He specifically alleges that on September 13, 2006, the defendant Warden Time Riley issued a memorandum prohibiting Muslims from praying in closed areas such as the barber shops, and instead stated that Muslims should pray in a corner of "the rock," or common area. (Compl. at 3.)

The plaintiff also alleges that on May 14, 2007, he filed a grievance and that the defendants failed to respond. He is seeking a default judgment based upon the

defendants' failure to answer the grievance. (*Id.*) The plaintiff is also seeking declaratory and injunctive relief, a preliminary injunction prohibiting retaliation, and punitive damages to deter similar actions. (Compl. at 5.)

## **APPLICABLE LAW**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

**DISCUSSION**

On September 13, 2006, the defendant Warden Riley issued a memorandum which prohibited Muslim inmates from making their five daily prayers in closed areas, including barber shops which are located off the sally port in each dormitory. (Defs.' Mem. Supp. Summ. J. Mot. Ex. A - Riley's Aff.) Muslims were informed that they could as a group on "the rock," or the common area, within each living unit or individually in their cells. In his amended complaint, the plaintiff alleges that he is being denied the ability to exercise his religious beliefs as a Muslim because he is no longer allowed to pray in a closed area. The plaintiff alleges this constitutes a violation of his First Amendment rights.

It is well-settled that prisoners retain fundamental constitutional rights. *See Turner v. Safley*, 482U.S. 78, 84 (1987). These rights include the reasonable opportunity to

pursue one's religion as guaranteed by the free exercise clause of the First Amendment. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Furthermore, the United States Supreme Court has stated that prisoners maintain the right to follow their religion, so long as their religious practices can be reasonably accommodated by prison officials. However, when those practices conflict with security concerns, the "legitimate penological objectives" should control. *O'Lone,* 482 U.S. at 353. Because of the inherent difficulties and concerns in running a prison, what constitutes a reasonable opportunity to practice one's religion must be evaluated with legitimate penological objectives of the prison. *Hudson v. Palmer*, 468 U.S. 517, 524, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

Thus, the standard for reviewing the validity of a prison regulation or policy affecting a prisoner's fundamental constitutional right, such as the free exercise of his or her religion, is: "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. Pursuant to *Turner,* the court must consider the following factors: (1) whether there is a logical connection between the restriction and the governmental interests invoked to justify it; (2) the availability of alternative means to exercise the restricted right; (3) the impact that accommodation of the right might have on other inmates, on prison personnel, and on allocation of prison resources generally; and (4) whether there are "obvious, easy alternatives" to the policy that could be adopted at de minimis cost. *Id.* at 89-90.

This undersigned agrees with the defendants that under *Turner*, the plaintiff cannot prevail on his First Amendment claim. Under the first *Turner* factor, the restriction of the plaintiff's right to associate is logically connected to the government's interests in maintaining order and security in its prisons and protecting society from convicted felons. As a Muslim, the plaintiff is required to pray five times a day. Ideally all five daily prayers should be congregational prayers. However, if the situation prevents it, then Muslim should make the prays individually. (Defs.' Mem. Supp. Summ. J. Mot. Ex. B -Omar Shaheed's Aff. ¶ 7.) "When security concerns exist, it is permissible for a Muslim inmate to make the daily prayers (other than Jumu'ah) individually." (*Id.*) *See also, Bryan v. Capers*, 2007 WL 2116452 (D.S.C. 2007); *Scott v. Ozmint,* 467 F.Supp.2d 564 (D.S.C. 2006) (inmate's rights were not violated where he could practice his religion individually). Muslims at TRCI are permitted to participate in group prayer in the common area and individually in their cells. In his affidavit, Warden Riley states his "intent [is] to ensure that Muslim inmates have the opportunity to pray as required by SCDC policy while also maintaining a safe, secure environment." (Defs.' Mem. Supp. Summ. J. Mot. Ex. A - Riley Aff. ¶ 4.) Warden Riley states that the barber shops are not an appropriate location for prayers because when inmates meet in private, where they cannot be monitored and supervised. (*Id.*) The Warden's rationale relating to safety concerns is logically connected to the restriction on group prayers by Muslims.

Under the second factor, the plaintiff has been provided means of worship and has not been deprived of all forms of religious exercise. Even though TRCI has limited the areas in which the plaintiff can practice his religion, he is not prohibited from practicing his religion.

Under the third factor, the plaintiff's requests are untenable and would place a tremendous burden on already limited resources. It is simply not possible, given the limited staff, time, and space at the institution, to provide separate worship services to each and every religious denomination. Under the fourth factor, obvious, easy alternatives at de minimis cost have been offered.

The plaintiff has not been denied the right or ability to make his five daily prayers in a group. He has merely been restricted to a specified area.[2] Furthermore, a Muslim inmate is also permitted to go into his individual cell for the prayers. Therefore, the policy implemented by Warden Riley does not violate the plaintiff's First Amendment rights.

**Supervisory Liability**

The defendants argue that to the extent that the plaintiff alleges that the defendant Jon Ozmint is subject to supervisory liability, such an allegations fails as a matter of law. The undersigned agrees.

---

[2]The plaintiff contends that in the common area while they are praying, other inmates use profanities, walk in front of them, and express their sexual desire for persons on television. (Pl.'s Mem. Opp. Defs.' Summ. J. Mot. at 4.) The defendants note that Muslims should not disturbed by the televisions in the common area because inmates must use headphones to listen to television. The undersigned also notes that the plaintiff finds barber shops an acceptable prayer area for group prayer even though other inmates would also be present there and presumably equally as offensive.

The plaintiff has failed to allege that either of defendant Ozmint committed any specific act. “It is well-settled that ‘[i]n order for an individual to be liable under § 1983, it must be ‘affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.’ “ *Davis v. D.S.S. of Baltimore Cty.*, 941 F.2d 1206 (4th Cir.1991) (unpublished)(*quoting Wright v. Collins*, 766 F.2d 841, 850 (4th Cir.1985). The plaintiff's complaint alleges no personal involvement on the part of these defendants.

"Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of respondeat superior, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (citation omitted). The plaintiff must demonstrate that the prisoner faces a pervasive and unreasonable risk of harm from some specified source, and that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices. *Id. See also Moore v. Winebrenner,* 927 F.2d 1312 (4th Cir.); *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). The plaintiff merely makes conclusory allegations that this defendant is responsible for the conditions of his confinement.

Further, the plaintiff has also failed to establish that there was a SCDC policy or custom that caused him any injury. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir.1977). He specifically alleges the policy came from Warden Riley. The plaintiff has failed to

allege facts which would support a finding the defendant Ozmint liable as a supervisor. Accordingly, the plaintiff's claims against the defendant Ozmint should be dismissed.

**Qualified Immunity**

The defendants also raise the defense of qualified immunity. Qualified immunity requires "(1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the [official's] position would have known that doing what he did would violate that right." *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir.1992). However, because there is no evidence that any specific right of the plaintiff was violated, it is unnecessary for this Court to address the qualified immunity defense. *See Porterfield v. Lott,* 156 F.3d 563, 567(4th Cir.1998) (when the court determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist.").

**Failure to Respond to Grievance**

The undersigned notes that the plaintiff also seems to be alleging a claim based upon the defendants' failure to respond to his grievance regarding this claim (Compl. at 3.) However, even if the defendants failed to respond to the plaintiff's grievance, the plaintiff has not stated a constitutional claim. The law is well-settled that there is no constitutional right to a grievance procedure. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-138 (1977). Even if the prison provides for a grievance

procedure, violations of those procedures do not amount to a civil rights cause of action. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1944) (dismissing plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such procedure"). Thus, even if the defendants failed to timely respond to, or process the plaintiff's grievances, the plaintiff has not stated a constitutional claim.

## CONCLUSION

Wherefore, it is RECOMMENDED that the Plaintiff's Motion for Summary Judgment (#29) be DENIED, the Defendants' Motion for Summary Judgment (# 32) be GRANTED, and the Plaintiff's complaint be DISMISSED with prejudice.

**IT IS SO RECOMMENDED.**

BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

September 3, 2008
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).